IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETRA MICHAEL, as individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-cv-4484 |
| | ) | |
| JAMES A. BELL, an individual and, | ) | Judge Robert M. Dow, Jr. |
| JAB DISTRIBUTORS LLC, an Illinois | ) | |
| Limited Liability Company, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Petra Michael has filed a seven count complaint against Defendants James A.

Bell and JAB Distributors LLC ("JAB"). Before the Court are Defendants' motions to dismiss

[13, 16] and motion for a more definite statement of Plaintiff's complaint [10]. For the reasons

stated below, Defendants' motions to dismiss [13, 16] are granted in part (as to Counts 1-3, 5,

and 7) and denied in part (as to Counts 4 and 6), and Defendants' motion for a more definite

statement of Plaintiff's complaint [10] is granted in part (as to Counts 4 and 6) and denied in part

as moot (as to Counts 1-3, 5, and 7). The dismissal is without prejudice to Plaintiff filing an

amended complaint within 21 days of this order.

I.    Background[1]

JAB, a limited liability organized in the state of Illinois, sells bedding products to hotels

and pest control industries. It is known to the public as "Protect-A-Bed." Defendant James Bell

is the CEO of JAB. In 2004, Plaintiff began working with Bell and JAB as an independent

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations
set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th
Cir. 2007).

contractor.  Plaintiff sold JAB's products to hotel industry clients. Through her work for JAB, Michael became close personal friends with Bell.  According to Michael, she placed a great deal of trust, confidence, and reliance in Bell, which he knew.

In September 2005, while working on her own time, Michael conceived and developed a new idea for a bed bug encasement ("BBE") for mattresses and box spring covers.  In November 2005, while still an independent contractor, Michael presented her idea for the BBE product to Bell.  Bell was very enthusiastic about Michael's idea and expressed interest in having JAB develop the BBE.  At that point, Bell raised the idea of having JAB employ Michael instead of having her work as an independent contractor.  Michael was receptive to the idea.

In late 2005 and early 2006, while Michael was still an independent contractor, she continued to work on and refine the BBE.  In April or May 2006, Michael and JAB developed a version of the BBE for the market and sold it to the EZ Hotel Group in San Diego for approximately $100,000.  Michael received a commission for the sale and the balance was reinvested in the BBE. After the sale, Michael and JAB discussed making further improvements, including how to improve the zipper end stop.

In May or June 2006, Bell told Michael that JAB needed her to sign a written employment agreement with JAB.  Michael agreed that an employment agreement made sense, so long as it was fair.  In June 2006, Michael, on behalf of JAB, also made arrangements for a public relations firm to announce "our newest product 'Protect-A-Bed Bed Bug Encasement' fully encased mattress and box spring covers which are certified to be bed bug proof." According to Plaintiff, the BBE not only was her idea, but she also sewed many of the prototypes herself.

On June 14, 2006 Bell asked Michael to come to his office and showed her an employment agreement. The draft contained language pertaining to the "work for hire" doctrine, whereby products or ideas developed by an employee become the property of the employer. Michael discussed the language with Bell, and he assured her that she would be compensated and treated fairly if her product had commercial success. On July 5, 2006, Michael signed a slightly revised version of the employment agreement. The agreement had a two year term, expiring in July 2008.

Michael and JAB continued to advertise and sell the BBE, including at the company's annual convention in February 2007, where Plaintiff contends that Bell told everyone that the BBE was Michael's idea.

On May 31, 2007, Bell, as well as two individuals from China, applied for a patent for the BBE, and Patent 7,552,489 was issued by the United States Patent and Trademark Office on June 30, 2009. The '489 Patent discloses that Bell and his co-applicants assigned the patent to JAB. According to Michael, the Defendants never sought or obtained assignment of Michael's rights to the '489 Patent despite the fact that she was the inventor—or at minimum a co-inventor—of the BBE.

On July 5, 2008, the parties' original employment agreement expired. Michael wanted a new employment agreement, but Bell and JAB declined. Instead Michael obtained an "override commission" in all sales of the BBE made by others, in addition to the commissions she earned on her own sales.

In the summer of 2009, around the time that the PTO issued the '489 Patent to JAB, Bell and JAB initiated a campaign that was intended to drive Michael out of the company. According

to Michael, she terminated her employment with JAB in July 2010 in response to the campaign of intentional harassment and under duress.

On July 1, 2011, Plaintiff filed a seven count complaint in this court alleging the following claims:  common law fraud (Count I); conversion (Count II);  tortuous interference with prospective economic advantage (Count III); breach of fiduciary duty (Count IV); intentional infliction of emotional distress (Count V); breach of contract (Count VI); and correction of the inventor of the patent pursuant to 35 U.S.C. § 256 (Count VII).

## II.    Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

In regard to Plaintiff's fraud claims, in order to survive a motion to dismiss, Plaintiff, must allege the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the Plaintiff. *Borsellino v. Goldman Sacks Grp., Inc*., 447 F.3d 502, 507 (7th Cir. 2007); see also, Fed. R. Civ. P. 9(b) ("a party must state with particularly the circumstances constituting fraud."); *Polansky v. Anderson*., 2005 WL 3357858, at *7 (N.D. Ill. Dec. 29, 2005) ("[M]ere conclusory language which asserts fraud without a description of fraudulent conduct, does not satisfy Rule 9(b)"). The absence of any necessary detail renders the pleading deficient.

## III.    Analysis

### A.    Count I: Common Law Fraud

Plaintiff first alleges that Defendants acted fraudulently. To establish common-law fraud in Illinois, a plaintiff must allege:

> (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made has a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.

*Wright v. Nissan Motor Corp*., 1997 WL 106101, at *3 (N.D. Ill. 1997). Moreover, "to be actionable under Illinois law, a misrepresentation must be of a fact." *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309 (Ill. App. 2002). Thus, "even a false promise of future conduct with no current intent to fulfill that promise will not constitute fraud." *Id*. Finally, where the allegations of a fraudulent scheme include multiple defendants, the complaint must "inform each defendant of the specific fraudulent acts" which constitute the basis of the action against them. *Lincoln Nat. Bank v. Lampe,* 414 F. Supp. 1270, 1278 (N.D. Ill. 1976); *Dudley*

*Enter., Inc. v. Palmer Corp.,* 822 F. Supp. 496, 500 (N.D. Ill. 1993) ("[I]t is not enough for plaintiffs to allege that 'defendants' committed fraudulent acts.").

In this case, Plaintiff's complaint simply does not plead with the detail required by Fed. R. Civ. P. 9(b). See *Polansky*, 2005 WL 3557858, at *7. The complaint alleges that Defendant made false statements of material fact when it said "that it was supposedly necessary to structure the parties' relationship as an employment relationship . . . in order to develop the [BBE] and bring the product to market." Plaintiff also alleges that Defendants made false promises of future performance ("they intended for Petra Michael to be rewarded as then inventor" of BBE) which they had no intention of performing, and that these false promises were "calculated to device and were material." This is exactly the type of conclusory language without a description of the fraudulent conduct that Rule 9(b) prohibits—Plaintiff fails to allege specific material facts which were material representations and fails to plead which Defendant committed which fraudulent act, referring instead to the Defendants generally. Because Plaintiff's complaint "uniformly fails to meet the standards set forth in Rule 9(b)," Count I must be dismissed. *Id.*[2] As noted at the outset, the dismissal is without prejudice and with leave to replead.

### B. Count II: Conversion

Plaintiff's second claim alleges Defendants wrongfully took control of her idea and intellectual property. Defendants argue that Plaintiff's claim fails because Illinois does not recognize a cause of action for conversion of intangible property.

---

[2] The Court also notes that with regard to Plaintiff's claim that Defendants made false promises—that they intended for Petra Michael to be rewarded as the inventor of the BBE—the written contract Michael attached to the complaint appears to contradict the allegation. Plaintiff admits that she knowingly signed a work for hire agreement that gave all rights to JAB. It is thus unclear how Plaintiff could plead that she acted in reliance on Defendants' promise that she would be credited with the invention, if the contract she provides specifically stated that JAB would hold all rights to the invention. Plaintiff may wish to address this apparent contradiction in any amended complaint.

In Illinois, "an action for conversion lies only for personal property that is tangible or at least represented by or connected with something tangible." *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 52 (1st Dist. 1998) (citing *In re Thebus*, 108 Ill 2d 255 (Ill. 1985)). Defendants argue that Plaintiff's complaint fails to allege any facts that establish that her idea was converted into something tangible and thus could be subject to a conversion claim; rather, Plaintiff alleges that Defendants stole her "ideas" and "intellectual property." The Court agrees. Under Illinois law, an action for conversion cannot lie for intangible property, and Plaintiff has failed to plead facts in her complaint that allege that Defendants took any tangible object from Plaintiff. Accordingly, Count II of Plaintiff's complaint is dismissed.

### C.      Count III: Tortious Interference

Plaintiff next alleges a claim for tortuous interference with prospective economic advantage. To prevail on a claim for tortious interference with prospective economic advantage, a plaintiff must prove: (1) a reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of the plaintiff's expectancy; (3) defendant's purposeful interference to defeat the expectancy; and (4) damages resulting from the interference. *Douglas Theater Corp. v. Chicago Title & Trust, Co*., 266 Ill. App. 3d 1037, 1047 (1st Dist. 1994) (citing *Eisenbach v. Esformes*, 221 Ill. App. 3d 440, 444 (1991)). Furthermore, Illinois courts long have held that the defendant's interference must be directed toward a third party. *Eisenbach,* 221 Ill.App.3d at 444; *Willcutts v. Galesburg Clinic Ass'n*, 201 Ill. App. 3d 847, 851(1990).

Here, Plaintiff's complaint lacks any allegations of specific actions by the Defendants directed at third parties—rather, the complaint focuses on her conduct and alleges that *she* would have entered into business relationships by licensing "her invention" to unnamed third-parties. Accordingly, Plaintiff has failed to satisfy the pleading requirements for tortuous interference,

and Count III of Plaintiff's complaint is also dismissed. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *Willcutts v. Galesburg Clinic Ass'n*, 201 Ill. App. 3d 847, 851 (3rd Dist. 1990) (upholding trial court's finding that plaintiff's claim of tortious interference failed because the plaintiff "failed to allege specific actions by defendants directed at third parties, but rather has presented broad, conclusory allegations against defendants.")

### D.     Count IV: Breach of Fiduciary Duty

Plaintiff alleges that Defendants breached their fiduciary duty to Plaintiff. To state a claim for breach of fiduciary duty, a plaintiff must establish: (1) the existence of a fiduciary duty; (2) breach of that fiduciary duty; and (3) that such breach proximately caused plaintiff's injuries. *Neade v. Portes,* 193 Ill. 2d 433, 444 (2000). If a duty does not exist by operation of law, the proponent must show—"by proof so clear and convincing, so strong, unequivocal and unmistaking"—the existence of "confidence reposed by one side and domination and influence exercised by the other." *Patel v. Boghra*, 2008 WL 2477695, at *6 (N.D. Ill. Jun 18, 2008) (citing *Gross v. University of Chicago*, 14 Ill App. 3d 326, 338-39 (1st Dist. 1973). Finally, in the employment context, "[a]n employer does not owe an employee a fiduciary duty simply because they have entered into an employer/employee relationship together. *Id*.

Here, Plaintiff alleges that because her relationship with Bell was one of "special trust and confidence" and that "Bell was fully aware that [Plaintiff] had reposed in him her trust and confidence, and that she was relying on him in was that went beyond any mere business relationship," Bell owed her a fiduciary duty. Although these allegations may be sufficient to allege a breach of fiduciary duty claim against Defendant Bell, it is unclear whether Plaintiff is

8

attempting to assert such a claim against both Defendants – and, if so, whether Plaintiff is pursuing an alter ego theory. In these circumstances, the proper course is for the Court to direct Plaintiff to clarify her claim in an amended pleading. Accordingly, Defendants' motion for a more definite statement is granted in part as to Count IV.

### E.       Count V: Intentional Infliction of Emotional Distress

Plaintiff next argues that Defendants' actions amounted to intentional infliction of emotional distress ("IIED"). Under Illinois law, IIED requires: (1) extreme and outrageous conduct by the defendants; (2) intent to cause, or reckless disregard of the probability of causing emotional distress; (3) sever or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendants' outrageous conduct. *Hamros v. Bethany Homes and Methodist Hosp. of Chicago*, 894 F. Supp. 1176, 1180 (N.D. Ill. 1995). Illinois courts have consistently held that the conduct alleged must be particularly egregious; "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle plaintiff to punitive damages for another tort. Liability has been found only when the conduct is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Public Finance Corp. v. Davis,* 66 Ill. 2d 85, 89–90 (1976) (citation omitted). Furthermore, "in the employment context, courts have held that Illinois law strictly demands a showing of extreme and outrageous behavior." *Harmo*s, 894 F. Supp. at 1180.

Here, Plaintiff's complaint alleges that Defendants' verbally and non-verbally harassed her, she was demoted, her commissions were eliminated, and she suffered professional embarrassment and humiliation. Without more, however, these allegations come nowhere close

to the "extreme and outrageous" conduct required for an IIED claim—the conduct alleged is not "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Public Finance Corp*., 66 Ill. 2d at 89-90; see, e.g., *Redman v. Gas City, Ltd*. 2007 WL 869561, at *3 (N.D. Ill. Mar. 21, 2007) (denying motion to dismiss plaintiff's IIED claim when plaintiff pled facts alleging that she endured two years of lewd sexually charged comments, was referred to by a derogatory terms, and her complaints to the company about the behavior were ignored). Therefore, Count V of Plaintiff's complaint is also dismissed.

### F.     Count VI: Breach of Contract

Plaintiff next alleges that Defendants breached an express and implied agreement with her when it constructively terminated her employment, stopped paying her for overrides, and deprived her of the opportunity for commissions from sales of the BBE.  Defendant argues that Plaintiff's complaint is deficient because Plaintiff failed to identify what agreement, and specifically what provisions of the agreement, Defendants' breached.  The Court agrees with Defendants.

Under state law, "[a] complaint based on a breach of contract must allege the existence of the contract purportedly breached by the defendant; the plaintiff's performance of all contractual conditions required of him; the fact of the defendant's alleged breach; and the existence of the damages as a consequence." *McCellan v. Banc Midwest McLean County*, 164 Ill. App. 3d 304, 307 (4th Dist. 1987).  Although Rule 8 does not necessarily require facts to support every element of a claim, Plaintiff's allegations here are so vague that they fail to alert the Defendants as to exactly what agreement was breached, specifically what terms of the agreement(s) they breached, and which Defendant breached them.  These shortcomings render a responsive pleading so difficult to fashion that a more definite statement is in order, and Defendants' motion

requesting such relief therefore is granted in part as to Count VI. If Plaintiff wishes to re-plead a breach of contract claim, she should set forth: (1) what kind of contract she believes she had with Defendants; (2) whether the contract was written or oral; (3) if it was written, specify the writings; (4) if it was oral, state the terms and the particulars as to when and by whom the agreement was entered into; and (5) which Defendant(s) entered into each contract. See *Ohio Casualty Ins. Co. v. Bank One*, 1997 WL 30951, at *1 (N.D. Ill. Jan. 22, 1997) (dismissing breach of contract claim where plaintiff failed to amend complaint in compliance with court's instructions).

### G. Count VII: Correction of Inventorship Pursuant to 35 U.S.C. § 256

Finally, Plaintiff asks the Court to enter an order, pursuant to 25 U.S.C. § 256, that she is the true "inventor" of '489 Patent, or, in the alternative, that she is a "co-inventor." Section 256 provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all of the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly. 35 U.S.C. § 256

Plaintiff first contends that under Section 256 she should be named the sole inventor of the '489 Patent. Neither the Seventh Circuit, nor the Federal Circuit has directly addressed this issue, but the Court finds the reasoning in *Maxwell v. Stanley Works* persuasive on the issue. *Maxwell v. Stanley Works*, 2006 WL 1967012, at *4 (M.D. Tenn. July 11, 2006), aff'd on other

grounds, 262 Fed. Appx. 267 (Fed. Cir. 2008). In *Maxwell*, the Court held that Section 256's provision for correction of patents "does not allow correction by substitution of an alleged true sole inventor for the named sole inventor." *Id.* (citing *Rawlplug Co., Inc. v. Hilti Aktiengesellschaft,* 777 F. Supp. 240, 243 (S.D.N.Y.1991); see also, *Bemis v. Chevron Research Co.,* 599 F.2d 910, 912 (9th Cir. 1979); *McMurray v. Harwood*, 870 F. Supp. 917, 919 (E.D. Wis. 1994); *Dee v. Aukerman,* 625 F. Supp. 1427, 1428 (S.D. Ohio 1986); *Rival Mfg. Co. v. Dazey Products Co.,* 358 F. Supp. 91 (W.D. Mo. 1973).

Furthermore, in *Bermis*, the Ninth Circuit noted that the congressional committee report on Section 256 "clearly demonstrates" that the statute remedies only innocent errors in joined or non-joiner of inventors. 599 F.2d at 912. In other words, Section 256 "provides a remedy for innocent errors where the name of an inventor was inadvertently deleted or joined in the design patent. This section does not deal with fraud on the PTO." *Eldon Industries, Inc. v. Rubbermaid, Inc.,* 735 F. Supp. 786, 817 n. 16 (N.D. Ill. 1990) (citations omitted). Here, far from seeking a remedy for an innocent error, Plaintiff's complaint alleges that Defendants committed a fraud on the PTO by applying for the patent without designating her as the inventor or obtaining assignment of her rights to the '489 Patent. Accordingly, the Court cannot provide the relief that Plaintiff seeks. See *McMurray*, 870 F. Supp. at 919.

Plaintiff asks the court—in the alternative—to name her as a co-inventor on the '489 Patent pursuant to Section 256. To be a joint inventor, one must "(1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Pannu v. Iolab Corp.*, 155

F.3d 1344, 1351 (Fed. Cir. 1998). An "alleged joint inventor seeking to be listed on a patent must demonstrate that his labors were conjoined with the efforts of the named inventors." *Eli Lilly and Co. v. Aradigm Corp*., 376 F.3d 1352, 1359 (Fed. Cir. 2004). Moreover, "[f]or persons to be joint inventors . . . there must be some element of joint behavior, such as collaboration or working under common direction." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992).

Here, Plaintiff cannot be a co-inventor of the '489 Patent because her complaint does not allege that she collaborated with Defendants or the other parties named in the '489 patent. Rather, Plaintiff's complaint repeatedly alleges that she "alone" conceived of the BBE and that she is the "sole" and "true" inventor. Accordingly, Plaintiff has not plead any facts that support a claim for co-internship of the '489 Patent under Section 256, and Count VII must be dismissed for failure to state a claim on which relief can be granted.[3] See *Maxwell*, 2006 WL 1967012, at *5.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss [13, 16] are granted in part (as to Counts 1-3, 5, and 7) and denied in part (as to Counts 4 and 6). Defendants' motion for a more definite statement [10] is granted in part (as to Counts 4 and 6) and denied in part as moot

---

[3] Defendants also argue that Plaintiff lacks standing to sue under Section 256. "The fact that a plaintiff contends she is entitled to be listed as a co-inventor on a patent is not sufficient, on its own, to confer constitutional standing to sue under section 256." *Hoang v. Abbott Labs*., 2009 WL 1657437, at *2 (N.D. Ill. Jun. 12, 2009) (citing *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed.Cir.2001)). Rather, the Plaintiff must demonstrated that "she has suffered an injury-in-fact, that the injury is traceable to the conduct complained of," and that a court can provide a remedy for that injury. *Id*. In *Hoang*, the court found that the plaintiff did not have a direct financial interest in the patent at issue because the evidence demonstrated that she had assigned any such interest to the defendants. *Id*. Because the Court dismisses Plaintiff's claim on other grounds, it will not address Defendants' additional argument that Plaintiff does not have standing because she signed a contract assigning her rights to JAB. But, if Plaintiff chooses to file an amended complaint, Plaintiff should address Defendants' contention that she has assigned her rights to the '489 Patent.

(as to Counts 1-3, 5, and 7). The dismissal is without prejudice and with leave to file an amended complaint within 21 days, if Plaintiff so chooses. If Plaintiff chooses to file an amended complaint, the Court recommends—in addition to the instructions above—that Plaintiff plead facts as to each particular Defendant, and not to both Defendants generally.

Dated: August 13, 2012

_____

Robert M. Dow, Jr.
United States District Judge